In the MATTER OF Lawrence Jamalian GREEN, Attorney–Respondent.

No. 99SA150.

Supreme Court of Colorado,
En Banc.

Sept. 11, 2000.

Rehearing Denied Oct. 10, 2000.

John S. Gleason, Attorney Regulation Counsel, James S. Sudler, Assistant Regulation Counsel, Denver, Colorado, for Complainant.

Lawrence Jamalian Green, Pro Se, Littleton, Colorado.

PER CURIAM.

Lawrence Jamalian Green, the respondent in this lawyer regulation case, was admitted to practice law in Colorado in 1979. A hearing panel of the former grievance committee[1] approved the findings and recommendations of a hearing board that Green be suspended for sixty days. The hearing board found that Green charged an excessive fee in a civil case and authored letters and motions to a trial judge containing "relentless criticism and contempt for the judge" constituting "a serious breach of acceptable behavior for an attorney toward a member of the judiciary." We conclude that the First Amendment prohibits disciplining Green on the basis of his communications with the judge because

the communications did not make or imply false statements of fact. However, we agree that Green violated Colo. RPC 1.5 by charging an unreasonable fee. Thus, we reject the recommendation of a sixty-day suspension, and we determine that public censure is an adequate sanction this case.

## I. FACTS AND PROCEDURAL HISTORY

Following an evidentiary hearing, the board issued its findings of fact, conclusions of law, and recommendation. We include undisputed portions of the record, together with the board's findings of fact as the basis of our discussion.

A tile contractor hired Green in 1991 to sue a homeowner and her husband for failure to pay for the contractor's installation of ceramic tile in their house. Green filed an action in Douglas County District Court on behalf of the contractor against the homeowners for breach of contract and to foreclose a mechanics' lien in the amount of $7,422.33. The defendants counterclaimed, asserting that the contractor breached implied warranties of fitness for a particular purpose and merchantability. The contract between the tile contractor and the homeowners entitled the party who prevailed at trial to attorney's fees and costs. Green and his client agreed that if the client prevailed, then Green would accept as his fee whatever amount the court awarded. Otherwise, the client would owe Green nothing.

After a bench trial, the trial judge issued findings of fact, conclusions of law, and an order. The court sustained the contractor's breach of contract claim and dismissed the homeowners' counterclaim. The judge awarded Green's client damages in the amount of $7,422.33, plus costs, interest, and attorney's fees. The court directed Green to

---

1. By order of the supreme court dated June 30, 1998, effective January 1, 1999, the grievance committee was superseded by the reorganization of the attorney regulation system. The same order provided: "All attorney discipline cases in which trial has occurred prior to January 1, 1999 before a Hearing Board ... shall be reviewed by the applicable Hearing Panel at a final meeting to be held in 1999...." Order re Reorganiza-

tion of the Attorney Regulation System (Colo. June 30, 1998), *reprinted in* 12 C.R.S. at 605 (1999). This case was tried on October 15, 1998, and was approved by the appropriate hearing panel on March 24, 1999. Four members of the nine-member hearing panel voted to approve the board's findings and recommendation, one member dissented, and four members were absent and did not vote.

file an affidavit for fees and costs within fifteen days.

In an affidavit filed following trial, Green requested attorney's fees in the amount of $29,554.80, which he calculated by multiplying his hourly rate of $165 by the 179.12 hours he claimed to have worked on the case. After a hearing, the trial judge determined that Green's billing rate was reasonable, but that the itemized list of services Green personally performed included secretarial or other non-attorney services that are not usually billed to clients. Thus, the judge ruled that the amount Green claimed was excessive and that a reasonable fee under the circumstances was $12,000.

Several months after the trial court's award, Green filed a motion under C.R.C.P. 97 to recuse the trial judge "for bias and prejudice against Plaintiff and this attorney." In his affidavit in support of the motion to recuse, Green asserted that the trial judge interrupted him while he was making an argument for his fees and directed Green, over his objections, to conclude his argument. In addition, Green accused the trial judge of "callous indifference and impatience with [Green's] oral arguments as reflected in [the judge's] facial grimaces." Green also objected to the substance of various rulings by the trial judge. The trial judge denied the motion to recuse.

The homeowners appealed the trial court's judgment in the contractor's favor on the breach of contract claim. The contractor and Green cross-appealed the amount of the fee award. The court of appeals affirmed the trial court's judgment regarding the contractor's breach of contract claim and dismissal of the homeowners' counterclaim. *See Tile Design Studio v. Rosendahl,* 1995 WL 761995 No. 94CA0060, slip op. at 4–5 (Colo. App. Aug.31, 1995) (not selected for official publication). However, the court of appeals reversed the trial court's judgment on the issue of Green's fees, holding that it was not supported by the trial court's findings:

> [T]he record does not reflect that the trial court actually derived the amount of fees awarded by considering both a reasonable hourly rate and a reasonable number of hours, then making any necessary adjust-

ments. In particular, the trial court's order does not indicate its finding as to the reasonable number of hours expended on the claims involving the homeowners.

*Id.* at 9–10. Remanding the case, the court of appeals directed the trial court to reconsider the issue of Green's fees and make additional findings on the reasonableness of the hours Green worked on the case. *See id.* at 10, 12.

While the trial judge was reconsidering the reasonableness of Green's fees, Green wrote three letters to the judge. In the first letter, Green stated, "Aside from the errors attributed to you by the appellate court I am aggrieved personally by comments and expressions made about me in your order [awarding attorney's fees]." Green indicated that he was offended because the trial judge, in the order, evaluated his performance as only "competent" while, according to Green's letter, he had "single-handedly prevailed throughout this litigation against four attorneys and no less significantly I prevailed against you, the trial judge." Green (who is African–American) continued that the use of the word "competent" reminded him of allegedly racist remarks attributed to a former justice of this court in 1978. In conclusion, Green "request[ed] an *in camera* pre-hearing conference attended by me and of course [opposing counsel] at the earliest possible date." Below Green's signature was a notation that he sent a copy of the letter to the opposing counsel.

The trial court issued an order, stating that it would reconsider the issue of attorney's fees pursuant to the court of appeals decision. However, the trial court also stated that no further hearing was necessary and that Green's request for an in camera hearing was therefore denied.

Before the trial court finished reconsidering Green's fees, Green filed a supplementary affidavit for attorney's fees in addition to those he had already claimed. Green stated that, through trial and the appeal, he had expended 618.13 hours of time and that his hourly fee rate was $165, amounting to $101,991.45 in attorney's fees. Subtracting the amount of fees he had previously claimed

for the trial ($29,554.80), Green asked for $72,436.65 in attorney's fees for his work on the appeal.

Green sent a second letter to the judge on January 3, 1996, a copy of which Green also sent to opposing counsel. In this letter, Green suggested that the trial judge was unfairly biased against him. Green noted that he and his client have a right "not to have our issues of attorney fees and costs heard and decided by a judge with a 'bent of mind.' ... Basic to our system of justice is the precept that a judge must be free of *all* taint of bias and impartiality."

Also in the second letter, Green recounted the first time that he met the trial judge. Green stated that while he was in the court clerk's office, the judge came out, looked at him, and asked the clerk on behalf of which attorney was Green reviewing the file. Green's letter claimed, "Those circumstances characterize you as a racist and bigot for racially stereotyping me as unable to be an attorney because I was black."

In this letter Green also alleged that the judge entered an order releasing the mechanics' lien and lis pendens without providing Green a copy of the order. Green concluded the letter by stating, "I believe the totality of the circumstances dictate and require you to recuse yourself from any further proceedings in this case."

Green followed the second letter with a second motion to recuse. The second motion reiterated Green's version of his 1993 meeting with the judge and listed the judge's actions in the present case that Green believed cast aspersions on his legal abilities.

Green sent a third letter to the trial judge on February 29, 1996, again sending a copy to opposing counsel. Green stated that "the time is ripe for you to recuse yourself." He continued, accusing the trial judge of racism:

I do not believe I can state my case more emphatically than I already have; I want you off this case. I am entitled to and I affirm my right not to have my attorney fees determined by a racist judge. Merely sitting on this powder keg will not prevent it from exploding. My attitude toward you shall not change; in fact I am even more

convinced now of your racism .... Recuse yourself!!

The other critical element is *time* .... This case has been underway in one forum or another for over four years. Your dilatoriness in recusing yourself is delaying determination of my fee by a replacement judge. I want my fee determined promptly by another judge. I need not remind you of the dilatoriness standard for judges established by the Colorado Supreme Court in *In re Jones.*

Again I urge you, recuse yourself from this action, immediately!!

The trial court issued its order reconsidering the award of attorney's fees on March 27, 1996. The judge first subtracted the hours the judge found were related to the performance of secretarial functions from the total number of hours that Green claimed to have expended on the case, arriving at a total of 124.275 hours. The court then adjusted that amount by considering factors such as the amount of the plaintiff's recovery, Green's defense against the homeowners' counterclaim, the actual trial time devoted to the case, and the discovery that Green performed. The trial court adjusted the total of hours to 100 hours. Based on Green's hourly rate of $165, which the court found reasonable, the court awarded Green a total of $16,500 in attorney's fees for Green's work on the trial. The trial court also ruled that it did "not believe that it has jurisdiction to determine attorney fees on appeal and suggests that those issues are more appropriately addressed to the Colorado Court of Appeals." The judge again refused to recuse himself.

Disciplinary counsel brought a complaint against Green, charging him with violating Colo. RPC 1.5(a) (charging an excessive fee), 8.4(d) (engaging in conduct prejudicial to the administration of justice), 8.4(g) (violating accepted standards of legal ethics), and 8.4(h) (engaging in any other conduct adversely reflecting on the lawyer's fitness to practice law). After a hearing, the hearing board concluded that Green's criticism of the trial judge, in his letters and motions to recuse, violated rules 8.4(d), 8.4(g), and 8.4(h), and

that Green also violated rule 1.5(a) by charging an excessive fee.

## II. DISCUSSION

### A. Green's Letters to the Trial Judge, Colo. RPC 8.4(d), 8.4(g), & 8.4(h), and the First Amendment

■ The Supreme Court has not addressed the restraint on free speech inherent in disciplining a lawyer for comments criticizing a judge. Nor have we.[2] Thus, we begin with the accepted legal principle that if an attorney's activity or speech is protected by the First Amendment, disciplinary rules governing the legal profession cannot punish the attorney's conduct. *See In re Primus,* 436 U.S. 412, 432–433, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *Bates v. State Bar of Arizona,* 433 U.S. 350, 355, 365, 384, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *State of Oklahoma v. Porter,* 766 P.2d 958, 966–970 (Okla.1988); *see also Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1054, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (Kennedy, J., dissenting in part).[3]

■ Because neither we nor the Supreme Court has addressed the First Amendment implications of disciplining attorneys for their criticism of the judiciary, we look by analogy to *New York Times Co. v. Sullivan,* in which the Supreme Court held that a public official bringing a defamation case must prove "actual malice" in order to maintain an action:

> [The First Amendment] prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The burden of proving actual malice is on the plaintiff because otherwise "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so." *Id.* at 279, 84 S.Ct. 710.

■ Although "reckless disregard" of whether the statement was false is a somewhat imprecise standard, the Supreme Court has explained that as a term of art, "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). Rather, reckless disregard means that a statement is unprotected if the speaker made it "with a

2. *But see People ex rel. Elliott v. Green,* 7 Colo. 244, 250–51, 3 P. 374, 377–78 (Colo.1884). In *Green,* we disbarred an attorney for criticism in the form of "assaults, verbal or physical, upon the judge in person," on the street, which we suggested might have been designed "to engage [the judge] in a common street brawl and fight." 7 Colo. at 251, 253, 3 P. at 378–79. We were careful to protect the important speech interests at stake, noting:

> [J]udges are often compelled to endure the sting of misrepresentation and calumny ... but it is wisely considered better that these wrongs and injuries should be tolerated, than that the sacred liberty of speech, printed or spoken, should be abridged by lodging an arbitrary power to interfere therewith in the hands of the court or judge....

*Id.* at 250, 3 P. at 377–78. Despite our deference in *Green* to speech and criticism of government affairs, which we continue today, that case is of comparatively little relevance in the present case, both because of the violent circumstances involved there, and because we decided *Green* be-

fore the Supreme Court first applied the First Amendment to the states through the "liberty" protected by the Fourteenth Amendment. *See Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Thus, we decided *Green* without the benefit of two centuries of First Amendment precedent, which we find critical to our analysis here.

3. In *Gentile,* Justice Kennedy delivered the dispositive portion of the Court's opinion that the safe harbor provision of the rule at issue, providing that a lawyer "may state without elaboration ... the general nature" of the claim to the public, was void for vagueness. *See* 501 U.S. at 1048–1051, 111 S.Ct. 2720. In the section of his opinion cited here, however, he dissented from Chief Justice Rehnquist's opinion for the Court that the "substantial likelihood of material prejudice" standard for attorney comments to the press withstood First Amendment scrutiny because the prior restraint was "narrowly tailored" to address the state's interest in fair administration of the justice system. *See Gentile,* 501 U.S. at 1075–76, 111 S.Ct. 2720.

'high degree of awareness of ... probable falsity,' ... or ... 'entertained serious doubts as to the truth of his publication.'" *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (quoting *Garrison v. Lousiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), and *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), respectively).

■ As a logical extension of the *New York Times* test for assessing the defendant's knowledge of the falsity of his statement, "a crucial distinction exists between false statements of fact which receive no constitutional protection in defamation cases and ideas or opinions which by definition can never be false so as to constitute false statements which are unprotected." *Bucher v. Roberts,* 198 Colo. 1, 3, 595 P.2d 239 241 (1979); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ("Under the First Amendment there is no such thing as a false idea."). Thus, for example, if an attorney criticizes a judge's ruling by saying it was "incoherent," he may not be sanctioned.

■ However, if a statement of opinion implies an undisclosed false statement of fact, then the statement loses the protection of the First Amendment. *See Bucher,* 198 Colo. at 4, 595 P.2d at 241; Restatement (Second) of Torts § 566 (1976). Unlike stating that a judge's ruling was "incoherent," commenting that the judge "must have been drunk," even if meant as a figurative way of saying the ruling was incoherent, implies an objective fact that can be proven as false:

that the judge was intoxicated when she issued the ruling. *Cf. Standing Committee on Discipline v. Yagman,* 55 F.3d 1430, 1441 (9th Cir.1995) (stating that judge was "drunk on the bench" implied statement of fact, but attorney could not be disciplined for it because disciplinary authority did not prove that the judge was not drunk).

■ Although the Supreme Court has never considered the *New York Times* test in the context of attorney discipline based upon criticism of a judge, disciplining an attorney for criticizing a judge is analogous to a defamation action by a public official for the purpose of this First Amendment analysis. The Court considers attorney discipline a "quasi-criminal" sanction. *See In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *see also United States v. Brown,* 72 F.3d 25, 29 (5th Cir.1995). The Supreme Court has applied the *New York Times* test of actual malice to the criminal defamation prosecution of a lawyer for criticism of a judge, finding no relevant distinction between the civil and criminal contexts. *See Garrison,* 379 U.S. at 74, 85 S.Ct. 209. Because attorney discipline is quasi-criminal in nature and the Court has applied the *New York Times* test to criminal defamation, several other jurisdictions apply the *New York Times* test or a minor modification of this test in disciplining attorneys who criticize judges. *See, e.g., Yagman,* 55 F.3d 1430, 1437–38; *United States District Court v. Sandlin,* 12 F.3d 861, 867 (9th Cir.1993); *In re Petition for Disciplinary Action Against Graham,* 453 N.W.2d 313, 320–21 (Minn. 1990); *State Bar v. Semaan,* 508 S.W.2d 429, 432–33 (Tex.Civ.App.1974).[4]

---

4. Indeed, Colo. RPC 8.2(a) incorporates the *New York Times* standard:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge....

Rules 8.4(d), 8.4(g), and 8.4(h), under which Green was charged in this case, do not reflect the *New York Times* test. Colo. RPC 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:
...
(d) engage in conduct that is prejudicial to the administration of justice;
...
(g) engage in conduct which violates accepted standards of legal ethics; or

(h) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

However, the fact that a prosecution of an attorney's speech criticizing a judge is brought under these rules does not insulate it from the limitations of the United States Constitution. *See In re Primus,* 436 U.S. at 427 n. 18, 98 S.Ct. 1893 (holding that where one disciplinary rule proscribed in a narrower fashion the same conduct as a broader rule, determination of unconstitutionality as to the narrower rule applies equally to discipline for the same conduct under the broader rule).

These cases reason that the protection of attorney criticism of judges is similar to the protection of criticism of other public officials, relying upon the principal purpose of the First Amendment: safeguarding public discussion of governmental affairs. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). "Plainly it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." *Id.* Restrictions on attorney speech burden not only the attorney's right to criticize judges, but also hinder the public's access to the class of people in the best position to comment on the functioning of the judicial system. *See Porter,* 766 P.2d at 967. Interest about judges is important in Colorado, where the public periodically votes whether to retain judges. *See* Colo. Const. art. VI, §§ 20(1), 25; *Semaan,* 508 S.W.2d at 432 ("[T]he right of a lawyer as a citizen to publicly criticize adjudicatory officials . . . . is particularly meaningful where, as in Texas, the adjudicatory officials are selected through the elective system.").

Thus, because of the interests in protecting attorney speech critical of judges, we agree with those jurisdictions that have applied a version of the *New York Times* standard when considering discipline of attorneys who criticize judges. We hold that under the *New York Times* standard, a two-part inquiry applies in determining whether an attorney may be disciplined for statements criticizing a judge:[5] (1) whether the disciplinary authority has proven that the statement was a false statement of fact (or a statement of opinion that necessarily implies an undisclosed false assertion of fact); and (2) assuming the statement is false, whether the attorney uttered the statement with actu-

al malice—that is, with knowledge that it was false or with reckless disregard as to its truth.

Applying these principles to this case, we note that the respondent characterized the trial judge in three letters as a "racist" and implied that the judge was not "free of all taint of bias and impartiality." He stated that past encounters "characterize you as a racist and bigot for racially stereotyping me as unable to be an attorney because I was black." These statements are expressions of Green's opinion. To the extent these statements imply factual assertions that might arguably support his opinions, Green's letters and his affidavits attached to the motions to recuse disclose fully the facts upon which Green based his opinion: the judge's labeling of his performance in the case as only "competent"; the account of their first meeting which Green interpreted as demonstrating that the judge assumed that Green was not a lawyer because of his race; and the way the judge treated Green during trial.

Each of these underlying factual assertions, that an incident occurred with the judge in the clerk's office, that the trial court found Green "competent," and statements the trial judge made during the trial of the case were not contested and disciplinary counsel did not assert that they had not happened. The hearing board made no findings that these underlying statements were false nor that Green's account of the trial judge's conduct implied a false assertion of fact. *See Yagman,* 55 F.3d at 1438–39 (holding lawyer could not be disciplined because disparaging statement that judge was anti-Semitic was opinion except for uncontested supporting statement of fact that judge had disciplined three Jewish attorneys).[6] The

---

**5.** We note that Green's statements do not involve any form of threat to a judge. *See People v. Hickman* 988 P.2d 628 (Colo.1999).

**6.** *But cf. In re Westfall,* 808 S.W.2d 829 (Mo. 1991). In that case, the court upheld the discipline of an attorney under Missouri's rule 8.2 for characterizing a judge's reasoning in an opinion as "somewhat illogical, and I think even a little bit less than honest," and stating that this "means that he made up his mind before he wrote the decision, and just reached the conclu-

sion that he wanted to reach." *Id.* at 831–82. However, commentators have found *Westfall* "very troubling indeed," saying that discipline there was improper because the statements at issue were not "factual statements about the judge that could be proved to be true or false." Geoffrey C. Hazard, Jr. and W. William Hodes, 2 *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 8.2:201 at 935 (2d. ed. Supp.1997).

trial judge himself testified at the disciplinary trial here that he denied Green's motion to recuse because "Mr. Green stated no actual facts which supported a finding of bias or prejudice. Rather, what he stated was subjective impressions on his part as far as the meetings that occurred between us and his conclusion, which were subjective, that he drew from it. . . ."

■ We view Green's statements that the judge was a "racist and bigot" and having a "bent of mind" as statements of opinion based upon fully disclosed and uncontested facts. Because Green's statements do not involve false statements of fact or represent statements of opinion necessarily implying undisclosed false assertions of fact, we may not, consistent with the First Amendment and the first prong of the *New York Times* test, discipline Green for his subjective opinions, irrespective of our disagreement with them. Thus, we need not proceed to the second part of the *New York Times* test concerning proof of actual malice.[7]

We also note that the facts of this case indicate a somewhat less compelling government interest in disciplining Green than existed in other cases dealing with attorney discipline for criticism of judges, all of which involved disparaging comments about judges made to a public audience. *See In re Palmisano,* 70 F.3d 483, 485–86 (7th Cir.1995) (statements made to state administrative officials and state and federal prosecutors); *Yagman,* 55 F.3d at 1434 (statements to media and media advertisements); *Porter,* 766 P.2d at 960–61 (statements to media); *Graham,* 453 N.W.2d at 316–318 (statements to county board and U.S. Attorney); *Westfall,* 808 S.W.2d at 831–32 (statements to media). The public nature of the statements in these cases was significant because "the issue is not simply whether the criticized individual has been harmed, but rather whether the criticism impugning the integrity of judge or legal officer adversely affects the administration of justice. . . ." *Graham,* 453 N.W.2d at 322; *cf. Gentile,* 501 U.S. at 1075–76, 111 S.Ct. 2720 (holding substantial state interest in restricting lawyer speech is in "preventing prejudice to an adjudicative proceeding").

■ In contrast to these cases, Green's statements were directed to a limited audience—the judge in question and opposing

---

**7.** We recognize that in disciplinary cases some jurisdictions have applied the second prong of the *New York Times* test—that the defendant knew the statement was false or spoke with reckless disregard as to its truth—as an objective requirement, contrary to the subjective approach of the Supreme Court in defamation cases. *St. Amant,* 390 U.S. at 731, 88 S.Ct. 1323. In *St. Amant,* the Court applied a subjective standard in defamation cases, holding that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.*

However, in the field of attorney regulation, the state often has a "subordinating interest which is compelling" in the efficient and fair administration of the justice system that is not present in other settings and with other parties. *Primus,* 436 U.S. at 432, 98 S.Ct. 1893; *see Gentile,* 501 U.S. at 1073–74, 111 S.Ct. 2720; *Graham,* 453 N.W.2d at 322. As the Supreme Court stated in *Primus:*

The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'

436 U.S. at 422, 98 S.Ct. 1893 (quoting *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)). As a result, several of the courts that applied the *New York Times* test to attorney discipline held that an objective standard applies, which might be expressed as whether the attorney knew the statement was false or whether a reasonable attorney, in the same or similar circumstances and in light of all her professional duties, would have had a high degree of awareness of the statement's probable falsity or would have entertained serious doubts as to the truth of her statement. *See Yagman,* 55 F.3d at 1437 (holding that "the inquiry focuses on whether the attorney had a reasonable factual basis for making the statements"); *Sandlin,* 12 F.3d at 867; *Graham,* 453 N.W.2d at 321–323 & n. 6 (focusing on "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances.") *but cf. Green,* 7 Colo. at 251, 3 P. at 378 ("so far as this liberty of speech in connection with judicial action is concerned, [an attorney's] official character in no way affects him; . . . for such acts he will be answerable only as other citizens are.").

However, because there has been no finding that the portion of Green's statements that were factual were false, we do not address this issue, and thus express no opinion on it.

counsel—and not to the general public.[8] The merits of the case had been decided and the only remaining issue was the award of attorney's fees to the successful litigant. Moreover, the judge was under no obligation to recuse himself, nor did he in fact do so. Thus, the possible adverse effect on the administration of justice appears to have been minimal. *Cf. Gentile,* 501 U.S. at 1075, 111 S.Ct. 2720 (allowing attorney discipline for comments to press—outside of the context of disparaging comments about judges—only upon showing of a "substantial likelihood of material prejudice"). As the Fifth Circuit stated, "Attorneys should be free to challenge, in appropriate legal proceedings, a court's perceived partiality without the court misconstruing such a challenge as an assault on the integrity of the court." *Brown,* 72 F.3d at 29.

We do not suggest that an attorney may not be disciplined for comments restricted to the adversarial setting, but only that First Amendment scrutiny requires closer attention to the somewhat reduced governmental interest at stake in this context than in the case of public comments to the press. *See id.; see also Gentile,* 501 U.S. at 1076, 111 S.Ct. 2720 (upholding discipline because restriction on attorney's comments to press was "narrowly tailored" to "substantial state interest"); *Primus,* 436 U.S. at 432, 98 S.Ct. 1893; *cf. In re Snyder,* 472 U.S. 634, 646–47, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) (declining to reach First Amendment issue because criticism of judicial administration sent to court employee was not subject for discipline under Model Rules of Professional Conduct rule 8.4(d)); *United States v. Cooper (In re Zalkind),* 872 F.2d 1, 4 (1st Cir.1989) (reversing discipline of lawyer for good faith

statements made in an affidavit supporting a recusal motion).

By clothing Green's comments with the mantle of the First Amendment, we neither condone the tone of Green's letters nor agree with the conclusions that he drew. We note that the hearing board found that the trial judge "made every reasonable effort to be courteous and attentive to the Respondent." The hearing board specifically found that there was no evidence of any bias or prejudice on the trial judge's part. Our review of the record fully supports these findings. The question we decide in this case is whether the First Amendment allows us to discipline Green for expressing a contrary conclusion. We believe it does not. We therefore dismiss the charges that Green violated Colo. RPC 8.4.

## B. Unreasonable Fee

■ Having held that the First Amendment shields Green's comments from discipline, we next address the hearing board's finding and conclusion that Green violated Colo. RPC 1.5(a) by charging an unreasonable fee on the appeal. We agree with the hearing board's conclusions.

The hearing board found, by clear and convincing evidence, that Green violated Colo. RPC 1.5(a), stating that particularly in light of the fee's amount in relation to the recovery, the fee was "outrageous on its face" and "grossly unreasonable."[9]:

> The sheer amount of the Respondent's fee demand is outrageous on its face, and reflects a disturbing lack of judgment and perspective on his part. The Board notes that the Colorado Rules of Professional Conduct set forth eight factors to be considered in determining the reasonableness

---

**8.** We note that the hearing board's finding that Green's letters "constituted a pattern of improper ex parte communications" is erroneous. First of all, the complaint did not charge that Green's letters to the judge were "improper ex parte communications" under Colo. RPC 3.5(b), so he cannot be punished on that basis. *See In re Ruffalo,* 390 U.S. 544, 550–551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (holding discipline on the basis of violations not alleged in complaint constitutes violation of due process because of absence of fair notice); *People v. Emeson,* 638 P.2d 293, 294 (Colo.1981). Furthermore, the home-

owners' attorney testified that he received copies of all three letters, and the board acknowledged that Green "provide[d] simultaneous copies of his letters to opposing counsel." Thus, the communications were not "ex parte" in the sense of a "communication between counsel and the court when opposing counsel is not present." *Black's Law Dictionary* 597 (7th ed.1999).

**9.** Colo. RPC 1.5(a) provides, in part:

(a) A lawyer's fee shall be reasonable.

of a fee. Applying each of these factors to this case, and in particular, § 1.5(a)(4) (the amount involved and the results obtained), the Board concludes that the Respondent charged a grossly unreasonable fee in violation of Colo. 1.5(a).

 It is not clear whether the fee demand that the board considered "outrageous on its face" was Green's initial request of $29,554.80 for the trial, or the supplemental demand for $101,991.45 for trial *and* appeal. The complaint alleged that Green "charged an unreasonable fee in violation of Colo. RPC 1.5(a) for his excessive charges on the *appeal* of the case." (Emphasis added). Because the complaint did not charge Green with violating Colo. RPC 1.5(a) with respect to his attorney's fees request for *trial*, the hearing board only should have considered whether Green's charges for the appeal ($72,436.65) were unreasonable. This is so because fairness dictates that a lawyer may not be disciplined for misconduct that is not charged in the complaint. *See Ruffalo*, 390 U.S. at 551, 88 S.Ct. 1222; *Emeson*, 638 P.2d at 294. Thus, we consider only the attorney's fees Green charged for the appeal. Our analysis is made more difficult because the hearing board made no findings separating the fees sought on appeal from those sought for trial.

Arguably, the $69,000 Green charged for the appeal is unreasonable per se because of the relatively small judgment of $7,400 involved. However, the issue is more complex. For instance, the attorney for the homeowners, who represented the losing party on all of the critical issues on appeal, testified that *his* attorney's fees for the appeal "were in the $30,000 to $40,000 range."

 Green's affidavit setting forth his time entries for work performed on the appeal contains unreasonable charges. There are charges reflecting time Green spent on tasks that could have been done by a non-lawyer at a significantly lower rate than $165 per hour. For example, there are multiple entries reflecting the faxing of documents to the client and opposing counsel, entries for calls made to the court of appeals clerk's office, and the delivery of documents to opposing counsel. Colo. RPC 1.5(a)(1) indicates that one factor in determining the reason-

ableness of a fee is "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Under this principle, charging an attorney's hourly rate for clerical services that are generally performed by a non-lawyer, and thus for which an attorney's professional skill and knowledge add no value to the service, is unreasonable as a matter of law. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *In re Taylor*, 100 B.R. 42, 45 (Bankr.D.Colo.1989); *In re Estate of Larson*, 103 Wash.2d 517, 694 P.2d 1051, 1059 (1985); *see also People v. Sather*, 936 P.2d 576, 578 (Colo.1997) (noting stipulation that it was unreasonable and unnecessary to charge $200/hour for lawyer's time picking up a police report); Model Rules of Professional Conduct Rule 1.5 commentary at 50 (3d. ed. annotated 1996).

 In addition, some entries for time spent on legal work are excessive. For example, there is an entry for receiving and reviewing the court of appeals decision and faxing it to the client. The court of appeals' opinion is twelve pages long. Green represents that he spent 6.0 hours performing these services. At $165 per hour, Green therefore charged $990 for reviewing and faxing a twelve page decision. This is an unreasonable charge as a matter of law for one of two alternative reasons. If the time was spent merely in "reviewing," in other words reading the appellate opinion with minimal additional legal analysis or research involved, it was an excessive and inefficient use of the attorney's time and it is unreasonable to charge for the lawyer's own inefficiencies:

> In short, the determination of what fees are reasonable involves more than simply multiplying the number of hours spent on a given case times a specific rate. An attorney must use judgment and discretion in rendering a bill. This includes recognizing the limits of one's own capacity and one's own inefficiencies. There is no reason or excuse for charging a client . . . for one's own inefficiencies.

*In re Guardianship of Hallauer*, 44 Wash. App. 795, 723 P.2d 1161, 1166 (1986).

If, on the other hand, his time involved more extensive work, then the billing statement is so vague that it fails reasonably to identify the nature of the services performed. *See Hart v. Bourque,* 798 F.2d 519, 522 (1st. Cir.1986) (holding unreasonable 52.5 hours for reviewing pleadings and memoranda because descriptions left court "at a total loss for identification"); *American Booksellers Ass'n, Inc. v. Hudnut,* 650 F.Supp. 324, 329 (S.D.Ind.1986) (holding entries for "research," without more, unreasonable as insufficiently specific); Model Rules of Professional Conduct Rule 1.5 commentary at 52. Either of these two bases is a sufficient rationale to conclude that this charge was unreasonable.

Thus, our review of the entire record, and specifically Green's affidavit for fees charged for the appeal, supports the hearing board's conclusion to the extent that it determined that Green charged an unreasonable fee on the appeal in violation of Colo. RPC 1.5(a).

## III. DISCIPLINE

Having concluded that Green charged an unreasonable fee in violation of Colo. RPC 1.5(a), we now address the appropriate level of discipline. Under the American Bar Association *Standards for Imposing Lawyer Sanctions,* public censure "is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards for Imposing Lawyer Sanctions* at 7.3 (1991 & Supp.1992) (hereinafter ABA *Standards*). "Charging a client an unreasonable or excessive fee is a violation of a duty owed as a professional." *People v. Sather,* 936 P.2d 576, 579 (Colo.1997). On the other hand, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards, supra,* at 7.2.

The commentary to standard 7.3 states, "Courts typically impose reprimands when lawyers engage in a single instance of charging an excessive or improper fee." We have recently found a public censure appropriate when a lawyer charges an excessive fee. *See In re Wimmershoff,* 3 P.3d 417, 421 (Colo. 2000); *see also People v. Wilson,* 953 P.2d 1292, 1294 (Colo.1998). We therefore begin with the presumption that a public censure is the appropriate level of discipline.

The hearing board found the existence of a mitigating factor and several aggravating factors. The only mitigating factor found by the hearing board was that Green had cooperated in these proceedings. *See* ABA *Standards, supra,* 9.32(e). Aggravating factors included the presence of a prior disciplinary offense, *see id.* at 9.22(a); that Green had a dishonest or selfish motive, *see id.* at 9.22(b); that there was a pattern of misconduct, *see id.* at 9.22(c); that the misconduct involved multiple offenses, *see id.* at 9.22(d); that Green refused to acknowledge the wrongful nature of his conduct, *see id.* at 9.22(g); and that Green has substantial experience in the practice of law, *see id.* at 9.22(i). As a result of our having dismissed all but the single violation of charging an unreasonable fee, the aggravating factors of a pattern of misconduct and the presence of multiple offenses no longer apply.

In our analysis, Green's prior discipline is not a significant factor. He received a letter of admonition twelve years ago for making false accusations against a judge. The similarity to the charges in this case is not relevant because we dismissed the similar charge that Green violated Rule 8.4. In addition, the hearing board acknowledged that this admonition was remote in time. This mitigates the fact of prior discipline. *See id.* at 9.32(m). Considering the seriousness of the misconduct, together with the aggravating and mitigating factors, we conclude that a public censure is an adequate and appropriate sanction. Accordingly, we reject the hearing board's and panel's recommendation of suspension.

## IV. DISPOSITION

Lawrence Jamalian Green is hereby publicly censured. Green is also ordered to pay the costs of this proceeding in the amount of $301.02 within thirty days of the date of this

decision to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432.